## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERREBONNE PARISH FIRE DISTRICT NO. 7,**
      **Plaintiff**

**VERSUS**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,**
      **Defendant**

**CIVIL ACTION**

**NO.  22-3880**

**SECTION: "E"(4)**

## ORDER AND REASONS

Before the Court is a Motion to Remand[1] filed by Terrebonne Parish Fire District No. 7 ("Plaintiff"). National Union Fire Insurance Company of Pittsburgh, PA ("Defendant") filed an opposition.[2] Plaintiff filed a reply.[3]

## BACKGROUND

Plaintiff is a fire district, located in Terrebonne Parish, that owns Upper Little Caillou Fire Station #1 in Chauvin, Louisiana.[4] Defendant issued an insurance policy providing coverage to Plaintiff.[5] On August 19, 2022, Upper Little Caillou Fire Station #1 was significantly damaged during Hurricane Ida.[6] Plaintiff reported the loss to Defendant.[7] Thereafter, an insurance coverage dispute arose, which is the subject of the instant litigation.[8]

---

[1] R. Doc. 11.
[2] R. Doc. 12.
[3] R. Doc. 15.
[4] *See* R. Doc. 1-1 at p. 2.
[5] *Id.*
[6] *Id.* at p. 4, ¶ 23 ("The damage to Station #1 is so severe that it now presents a hazard to other properties and people in the surrounding areas.").
[7] *Id.* at p. 2, ¶ 5.
[8] *See generally id.*

On August 25, 2022, Plaintiff filed suit against Defendant in the 32nd Judicial District Court ("JDC"), Parish of Terrebonne, State of Louisiana.[9] On October 14, 2022, Defendant filed a Notice of Removal, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332.[10] On November 21, 2022, Plaintiff filed a Motion to Remand, arguing complete diversity is lacking because Plaintiff is an arm or alter ego of the State of Louisiana and, as a matter of law, an arm of the state has no citizenship and cannot be removed to federal court under 28 U.S.C. §1332(a).[11] Plaintiff further argues it is immune from suit in federal court pursuant to the Eleventh Amendment.[12] Accordingly, Plaintiff moves the Court to remand the case to the 32nd JDC and "order defendant[] to pay any costs . . . incurred . . . as a result of this removal."[13]

## LEGAL STANDARD

Federal courts are courts of limited subject matter jurisdiction, and they possess only the power authorized by the Constitution and by statute.[14] Under 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the plaintiff could have originally brought the action in federal court.[15] Pursuant to 28 U.S.C. § 1332, a federal court may exercise subject matter jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs," and where there is complete diversity of citizenship.[16] The parties are completely diverse when no plaintiff is a "citizen of the same State as any defendant."[17]

---

[9] *Id.*
[10] R. Doc. 1 at p. 2, ¶ 8.
[11] R. Doc. 11-1 at p. 6.
[12] *Id.* at p. 1.
[13] R. Doc. 11 at p. 1.
[14] *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[15] *See* 28 U.S.C. § 1441.
[16] *See* 28 U.S.C. § 1332(a).
[17] *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016).

## LAW AND ANALYSIS

In its Notice of Removal, Defendant invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332(a).[18] Defendant argues diversity jurisdiction exists because the parties are completely diverse, and the amount in controversy exceeds $75,000 because "one week prior to filing [suit], Plaintiff sent [a] pre-suit demand for the remaining policy limits of $457,357.53 for the fire station."[19]

With respect to complete diversity, Defendant asserts it is citizen of Pennsylvania and New York because Defendant is a corporation incorporated in Pennsylvania with its principal place of business in New York.[20] Defendant asserts Plaintiff, as a political subdivision of the State of Louisiana, is a citizen of Louisiana for diversity jurisdiction purposes.[21]

In its Motion to Remand, Plaintiff argues complete diversity is lacking because the parties are not citizens of different states under § 1332.[22] Plaintiff argues it is not a citizen of Louisiana for purposes of diversity jurisdiction,[23] contending it is well-established that a state, and the arms or alter egos of the state, are not "citizens" for purposes of diversity jurisdiction.[24] Plaintiff argues it has no state citizenship for purposes of diversity jurisdiction because of its status as an alter ego of the state.[25] Plaintiff further argues it is immune from suit in federal court under the Eleventh Amendment to the United States Constitution.[26] In opposition to the Motion to Remand, Defendant argues complete

---

[18] R. Doc. 1.
[19] *See id.* at p. 5, ¶ 16.
[20] *Id.* at p. 3, ¶ 10.
[21] *Id.* at pp. 2-3, ¶ 9.
[22] R. Doc. 11-1.
[23] *Id.* at p. 1.
[24] *Id.* at p. 6.
[25] *Id.*
[26] *Id.* at p. 1.

diversity exists because Plaintiff, a political subdivision, is a citizen of the State of Louisiana and is not an arm or alter ego of the State of Louisiana.[27]

## I.   Sovereign immunity serves as a bar against suits brought against a state, not vice versa.

At the outset, the Eleventh Amendment does not apply to this action. For sake of argument, even if Plaintiff is an arm of the state entitled to invoke the Eleventh Amendment immunity afforded to the State of Louisiana, that immunity would avail Plaintiff of nothing in this case, as no claims are brought *against* Plaintiff. The Eleventh Amendment does not apply when, as in this case, the state entity is the party bringing the claims, rather than the party being sued.[28] However, even if the Eleventh Amendment could be construed to bar removal of a suit instituted by an arm of the state in state court, the Court concludes below that Plaintiff is not entitled to invoke the Eleventh Amendment immunity of the State of Louisiana because Plaintiff is not an arm or alter ego of the State of Louisiana.

## II.   Plaintiff is not an arm or alter ego of the State of Louisiana.

Plaintiff acknowledges it is a political subdivision of the State of Louisiana, as its Motion to Remand contains the allegation that Plaintiff is a "political subdivision of the [S]tate of Louisiana."[29] Louisiana's statutes and case law support the conclusion that local districts such as Plaintiff are political subdivisions.

---

[27] R. Doc. 12.

[28] *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 1989 U.S. Dist. LEXIS 13703, *1-2 ("The Eleventh Amendment prohibits suits in federal court 'commenced or prosecuted against one of the United States.' This amendment was enacted to protect states against federal judgments requiring payment of money which would interfere with states' fiscal autonomy and political sovereignty. Jagnandan v. Giles, 538 F.2d 1166 (5th Cir. 1976), cert den., 432 U.S. 910, 97 S.Ct. 2959 (1977). We are aware of no case holding that the Eleventh Amendment prevents removal of a suit filed by a state as a plaintiff. We conclude that the Eleventh Amendment is inapplicable.").

[29] R. Doc. 11-1 at p. 2.

Louisiana law enables parish governing authorities to create fire districts.[30] Fire districts, like Terrebonne Parish Fire District No. 7, are public corporations[31] and, as plainly expressed by statute, are "subdivisions of the state."[32] Additionally, Terrebonne Parish Code Ordinance, Chapter 8, Section 8-22 specifically states fire districts are "political subdivisions of the state."[33] Likewise, the Louisiana Supreme Court and intermediate appellate courts characterize local fire districts as political subdivisions of the state.[34]

With that backdrop, the Court now turns to the question of whether Plaintiff, a political subdivision of the State of Louisiana, is a citizen of Louisiana for purposes of diversity jurisdiction. "[A] State is not a 'citizen' for purposes of the diversity jurisdiction."[35] However, as the United States Supreme Court has expressly recognized, "a political subdivision of a State, unless it is simply the arm or alter ego of the State, is a citizen of the State for diversity purposes."[36] Unless Plaintiff is an arm or alter ego of the State of Louisiana, the Court has subject matter jurisdiction under 28 U.S.C. § 1332. Accordingly, the Court must determine whether Plaintiff is an arm or alter ego of the State of Louisiana.

"The analysis of whether a political body is a citizen for purposes of diversity jurisdiction is the same as the analysis used to determine if a political body enjoys 11th

---

[30] *See* La. R.S. 40:1500.
[31] *Id.*
[32] La. R.S. 40:1492(C) ("Fire protection districts so created are subdivisions of the state.").
[33] Terrebonne Parish Code of Ordinances, Ch. 8 "Fire Protection and Prevention," Article II, § 8-22(a).
[34] *See, e.g., Bayou Cane Volunteer Fire Dep't v. Terrebonne Parish Consolidated Gov't*, 548 So.2d 915, 918 (La. 1989); *Winn v. City of Kenner*, 225 So.2d 662, 663 (La. App. 4 Cir. 1969).
[35] *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973).
[36] *Id.*

Amendment immunity"[37] based on it being an arm or alter ego of the state.[38] The Fifth

Circuit has taken a "case-by-case approach to determining whether a state is the real party

in interest in suits brought against entities which appear to be" alter egos or arms of the

state.[39] The Fifth Circuit has applied the following six factors to determine whether an

entity is an arm of the state:

> (1) Whether the state statutes and case law characterize the agency as an arm of
>     the state;
> (2) The source of funds for the entity;
> (3) The degree of local autonomy the entity enjoys;
> (4) Whether the entity is concerned primarily with local, as opposed to state-
>     wide, problems;
> (5) Whether the entity has authority to sue and be sued in its own name; and
> (6) Whether the entity has the right to use and hold property.[40]

These factors, listed in *Delahoussaye,* were first enumerated by the Fifth Circuit in

*Clark v. Tarrant County* and are frequently referred to as the *Clark* factors.[41] Not all of

the factors are given the same weight, and it is not required that each factor be met before

an entity can be considered an alter ego of the state.[42] The second factor is the most

important because "an important goal of the Eleventh Amendment is the protection of

state treasuries."[43] Courts "typically deal with the last two factors in a fairly brief

fashion."[44] These factors help the courts "balance the equities and determine as a general

---

[37] *Sw. Louisiana Convention & Visitors Bureau v. Emps. Mut. Cas. Co.*, No. 2:06 CV 2006, 2007 WL 2228368, at *1 (W.D. La. June 25, 2007), report and recommendation adopted, No. 2:06 CV 2006, 2007 WL 9706278 (W.D. La. July 31, 2007) (citing *Tradigrain v. Mississippi State Port Authority*, 701 F.2d 1131, 1132 (5th Cir. 1983)).

[38] *See Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983) (stating that "the analysis of an agency's status is virtually identical whether the case involves a determination of immunity under the eleventh amendment or a determination of citizenship for diversity jurisdiction.").

[39] *Richardson*, 118 F.3d at 452.

[40] *Delahoussaye*, 937 F.2d at 147 (citing *Minton v. St Bernard Parish School Bd.*, 803 F.2d 129, 131 (5th Cir. 1986) and *Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986)).

[41] *See Clark*, 798 F.2d at 744–45; *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 319 (5th Cir. 2001).

[42] *Hudson v. City of New Orleans*, 174 F.3d 677, 681–82 (5th Cir. 1999).

[43] *Delahoussaye*, 937 F.2d at 147–48; *see also Hudson*, 174 F.3d at 682.

[44] *Hudson*, 174 F.3d at 682.

matter 'whether the suit is in reality a suit against the state itself.'"[45] The Court will now apply the six *Clark* factors to determine whether Terrebonne Parish Fire District No. 7 is an alter ego of the State of Louisiana.

(1) Whether state law characterizes the agency as an arm of the state:

As mentioned, Louisiana statutes and case law characterize local fire districts as political subdivisions of the state, not arms of the state. The Fifth Circuit has suggested that political subdivisions of a state and alter egos of a state are mutually exclusive categories.[46] After conceding that the mutual exclusivity of these categories is not a hard and fast rule, the Fifth Circuit went on to state that every "government entity classified as a political subdivision has been denied Eleventh Amendment immunity, perhaps because political subdivisions are more local in character."[47]

Further, the Fifth Circuit has stated, "[i]n every recent case in which a Louisiana political entity has been held to be an 'arm of the state,' the state agency being sued was part of a department within the executive branch."[48] The fact that local fire districts are not part of a department within the executive branch of Louisiana's government suggests Louisiana would not view Plaintiff as an arm of the state.[49]

Because the Louisiana statutes and case law classify local fire districts as "'political subdivisions' which are usually local governmental units with no connection to the

---

[45] *Id*. (quoting *Laje v. R.E. Thomason General Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)).
[46] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 692 (5th Cir. 2002) (recognizing that the Fifth Circuit's prior decision in *Cozzo v. Tangipahoa Parish Council–President Govt.*, 279 F.3d 273, 281–82 (5th Cir. 2002) suggests that political subdivision and arm of the state are mutually exclusive.).
[47] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 692 (5th Cir. 2002).
[48] *Id*. (citations omitted).
[49] *Id* (stating that "political subdivisions are not part of any department within the executive branch of government."); *see also* R. Doc. 12 at p. 6 (citing R. Doc. 11-1 at p. 4).

executive branch of government, the first factor points against" finding that Terrebonne Parish Fire District No. 7 is an alter ego of the state.[50]

(2) The source of funds for the entity:

The "source of funding" inquiry is a "specific" one.[51] Courts should consider the state's liability in the event there is a judgment against the fire district and the state's liability for the fire district's general debts and obligations.[52]

First, the State of Louisiana is not liable for judgments obtained against Terrebonne Parish Fire District No. 7, a political subdivision of the state. "The state's liability for a judgment is often measurable by a state's statutes regarding indemnification and assumption of debts."[53] Under the Louisiana Constitution, "[a]lthough the legislature has the authority to appropriate funds to pay a judgment against a [political subdivision], the legislature certainly has no legal obligation to do so."[54] "[A] state's voluntary, after-the-fact payment of a judgment [is not] a liability against the state's treasury."[55] Accordingly, no legal liability arises against the State of Louisiana in the event of a judgment against Terrebonne Parish Fire District No. 7. "Because an important goal of the Eleventh Amendment is the protection of state treasuries, the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds."[56]

"The next step [of the inquiry] is to determine whether the state will indirectly fund a judgment against the [fire] district because the state is either responsible for general

---

[50] *Vogt*, 294 F.3d at 692.
[51] *Id.* at 693.
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.* (internal quotations omitted).
[56] *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991).

debts and obligations or provides the lion's share of the [fire] district's budget."[57] The inquiry begins by assessing the public body's independent ability to generate revenue. "The ability to raise funds through taxing authority and borrowing weighs against" a party's characterization as an arm or alter ego of the state.[58] It is undisputed that Terrebonne Parish Fire District No. 7 and its governing authority may raise funds through bonds, levy taxes, and incur debts, all of which weighs against a finding of arm-of-the-state status.[59] Where, as here, "a state creates subdivisions and imbues them with a significant measure of autonomy, such as the ability to levy taxes, issue bonds, or own land in their own name, these subdivisions are too separate from the State to be considered its 'arms.' This is so even though these political subdivisions exist solely at the whim and behest of their State."[60]

Moreover, the Louisiana Constitution provides that "[t]he full faith and credit of the state shall be pledged to the repayment of all bonds and other evidence of indebtedness issued by the state directly or through any stage board, agency, or commission . . . . The full faith and credit of the state is not hereby pledged to the repayment of [debts] of a levee district, political subdivision, or local public agency."[61] Thus, the State of Louisiana is not liable to repay obligations incurred by Terrebonne Parish Fire District No. 7, which is a political subdivision.

With regard to the general question of the fire district's budget, Plaintiff does not represent that it receives the lion's share of its funding from the state. Accordingly,

---

[57] *Vogt*, 294 F.3d at 693.
[58] *Sw. La. Convention & Visitors Bureau v. Employers Mut. Cas. Co.*, 2007 WL 2228368, at *2 (W.D. La. 6/25/2007).
[59] *See* R. Doc. 12 at p. 9; R. Doc. 15 (not disputing this point).
[60] *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 313 (1990) (Brennan, J., concurring in part).
[61] LA. CONST. art. 7, § 6.

considering the lack of state liability in the event there is a judgment against Plaintiff and the lack of state liability for Plaintiff's general debts and obligations, the second factor weighs heavily against concluding that Plaintiff is an alter ego of the state of Louisiana.

(3) The degree of local autonomy the entity enjoys:

Terrebonne Parish Fire District No. 7 is subject to at least some oversight. For example, the state fire marshal exercises some oversight over local fire districts[62] and Terrebonne Parish Fire District No. 7 is also subject to legislative audit.[63] The Fifth Circuit has explained, however, "the determination of an agency's autonomy requires analysis of the extent of the [entity's] independent management authority."[64] While Plaintiff asserts, as a general matter, it is subject to state control and the state's police power, it fails to identify any facts regarding its management authority.[65] Courts analyze an entity's independent management authority by assessing the powers afforded to it and its leadership. The statutorily granted management powers of local fire districts are vast:

> A. Fire protection districts shall constitute public corporations and as such shall have all the powers of public corporations, including perpetual existence and the right and power to incur debt and contract obligations, to sue and be sued, and to have a corporate seal. Such districts shall also be authorized to do and perform all acts in their corporate capacity and in their corporate names necessary and proper for the purposes of acquiring, maintaining, and operating buildings, machinery, equipment, water tanks, water hydrants, water lines, and such other things, including both movable and immovable property, as might be necessary or proper for effective fire prevention and control or considered necessary by the governing body of the district for the protection of the property within the limits of the district against fire. However, districts may not own and operate systems of waterworks.
>
> B. Districts may utilize their equipment to transport any injured or ill person to a hospital or other place of medical care in an emergency situation where there is no reasonable expectation of the prompt response of an ambulance or industrial ambulance.

---

[62] *See* La. R.S. 40:1566.
[63] *See* La. R.S. 24:513.
[64] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 694 (5th Cir. 2002).
[65] *See* R. Doc. 11-1 at p. 4 ("the legislature has plenary supervisory powers over individual fire district").

C.  Districts may enter into such contracts as they consider necessary or desirable to carry out the purposes for which they were created, including, specifically, contracts with private or public entities pursuant to which water for fire protection purposes shall be made available and paid for by the districts.

D.  Districts may do such things and enter into such contracts and agreements with the United States or with any state or federal agency or instrumentality as are necessary to procure aid and grants to assist them in carrying out the purposes for which they were created.[66]

These powers evidence significant local autonomy over Terrebonne Parish Fire District No. 7's day-to-day functions and a broad extent of independent management authority.[67]

(4) Whether the entity is primarily concerned with local, as opposed to statewide, problems:

The parties agree fire districts are created for the purpose of fire protection.[68] However, Plaintiff argues Terrebonne Parish Fire District No. 7 is concerned with a statewide problem because "[f]ire control constitutes a matter of legitimate state wide concern."[69] Fifth Circuit case law, however, undermines this contention. For example, in *Vogt v. Board of Commissioners of the Orleans Levee District*, the defendant levee district argued that "the levee district [wa]s concerned with a statewide problem—flooding—and that the nature of the problem outweigh[ed] the geographic boundaries of the levee district."[70] The Fifth Circuit disagreed, reasoning "primary education and law enforcement are also statewide concerns, yet school boards and sheriffs are not arms of the state. As a general principle, then, the 'arm of the state' analysis focuses on the tasks undertaken by the particular defendant."[71] In reaching this conclusion, the Fifth Circuit

---

[66] La. R.S. 40:1500.

[67] *See, e.g.*, *St. Tammany Parish Hospital Service District No. 2 v. Zurich American Insurance Co., et al.*, Civ. A. 21-2204, R. Doc. 23 at p. 12 (E.D. La. 3/14/2022) (Morgan, J.).

[68] *See* R. Doc. 11-1 at p. 7; *see also* R. Doc. 12 at p. 12.

[69] R. Doc. 11-1 at p. 7.

[70] 294 F.3d 684, 695 (5th Cir. 2002).

[71] *Id.*

highlighted that "[l]imited territorial boundaries suggest that an agency is not an arm of the state."[72] Terrebonne Parish Fire District No. 7 possesses limited territorial boundaries consisting of Ward 7 of Terrebonne Parish.[73] Simply, Terrebonne Parish Fire District No. 7 only provides fire protection to Ward 7 of the Parish, *i.e.*, this is the task Plaintiff undertakes. Accordingly, Plaintiff is primarily concerned with local problems, as opposed to statewide ones.

(5) and (6) Whether the entity has the right to sue and be sued in its own name, and whether the entity has the right to hold and use property:

Terrebonne Parish Fire District No. 7 has the right to sue and be sued in its own name, and the right to hold, transfer, acquire, and use property.[74]

The Court finds that each of the six *Clark* factors points inexorably to the conclusion that Plaintiff is not an alter ego or arm of the State of Louisiana. As a political subdivision that is not an alter ego of the state, it is a citizen of the State of Louisiana. Because Defendant is not a citizen of the State of Louisiana, complete diversity exists in this case. Accordingly, the Court concludes it has subject matter jurisdiction over this action under 28 U.S.C. § 1332. Plaintiff's Motion to Remand is denied, and the parties are to comply with the Court's Case Management Order.[75]

### CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion to Remand[76] is **DENIED.**

**New Orleans, Louisiana, this 24th day of January, 2023.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[72] *Id.*
[73] Terrebonne Parish Code of Ordinances, Ch. 8 "Fire Protection and Prevention," Article II, § 8-21(5).
[74] La. R.S. 40:1500(A).
[75] *See* R. Doc. 10.
[76] R. Doc. 11.